UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PATRICIA A. WEEKLEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 2:22-CV-54 PLC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant, | ) |

**MEMORANDUM AND ORDER**

Plaintiff Patricia A. Weekley seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying her application for widow's benefits under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.    Background and Procedural History**

On May 29, 2020, Plaintiff filed an application for disabled widow's benefits and SSI, alleging she was disabled as of May 27, 2020, due to depression, anxiety disorder, hypertension and low intelligence quotient (IQ). (Tr. 15, 116-117, 269-278, 279-283) The Social Security Administration ("SSA") initially denied Plaintiff's claim in October 2020, and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 115, 185-188, 206-208) The SSA granted Plaintiff's request for review and conducted a hearing in August 2021. (Tr. 29-63)

In a decision dated September 16, 2021, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 27, 2020, through the date of

1

this decision[.]" (Tr. 15-23) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-5) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

Plaintiff, born July 23, 1966, testified that she is widowed and lives in a house with her married daughter, son-in-law, five year old grandson, and two unmarried daughters. (Tr. 36-37, 116) Plaintiff's married daughter and son-in-law both work morning shifts, and her unmarried daughters are out of school but do not work. (Tr. 37-38) Plaintiff testified that she previously provided babysitting for her grandson, but that he now attends kindergarten full-time. (Tr. 38) When she babysat her grandson, Plaintiff testified she did so for three hours a day. (Tr. 46) She often had crying spells while watching him, however, and would have to call her daughter to come home. (*Id.*)

Plaintiff testified that she completed twelfth grade, and had no further schooling, training or military service. (Tr. 39) She never obtained a driver's license. (*Id.*)

Plaintiff stated she was not currently working, but between 2016 and 2018 worked part-time in the laundry department of a nursing home. (*Id.*)[1] She testified that she obtained the job through Wider Opportunities, a shelter/workshop. (Tr. 45) Two job coaches transported Plaintiff to her job at the nursing home, sat with her while she worked, wrote evaluations, and returned Plaintiff to the workshop. (*Id.*) Plaintiff testified that she left the job at the nursing home when she moved to Hannibal in 2018, and did not look for other work. (Tr. 40)

---

[1] Prior to her employment at the nursing home, Plaintiff was a stay-at-home mother. (Tr. 39-40)

2

When the ALJ asked why she believed she was disabled, Plaintiff responded as relevant here that she suffers from depression.  (Tr. 40)  She described her depression as including crying spells and emotional issues.  (*Id.*)  Plaintiff testified that she takes medication for her mental health, but it causes side effects including headaches, trouble sleeping and a racing heart.  (Tr. 41)  She acknowledged that despite these complications, health care providers have not made changes to her medication protocol over time.  (*Id.*)

Plaintiff testified that she spends her mornings attending group therapy, and then returns home to relax and take time for herself.  (Tr. 43-44)  She does not perform household chores, but engages in Zoom chats with her psychosocial rehabilitation ("PSR") group.  (Tr. 44)  She does not cook, read, or participate in crafts.

Plaintiff testified that Mr. Geoff Westhoff has been her mental health counselor since 2016.  (Tr. 47)  She meets with Mr. Westhoff monthly, most recently by video teleconference.  (*Id.*)  Plaintiff stated she also participates in monthly sessions with a caseworker.  (Tr. 48)  Since 2018, Plaintiff has attended group counseling four days a week, from 9:30 to noon.[2]  (*Id.*)  Plaintiff testified that she experiences monthly panic attacks, as well as crying spells caused by loneliness, stress and anxiety.  (Tr. 49-50)

Plaintiff described herself as shy, and noted that people cause her uneasiness.  (Tr. 50)  She believes people are judging her, prompting feelings of worthlessness.  (Tr. 51)  Plaintiff is uncomfortable around men due to a 2012 sexual assault.  (*Id.*)

---

[2] Plaintiff testified she works on "life skills" during the group meetings, including making new friends, improving self-esteem and communication, making meals and working in a kitchen, cleaning her home, and improving personal hygiene.  (Tr. 48-49)

3

Plaintiff has difficulty following instructions, and often gets confused when attempting to complete tasks.  (Tr. 53-54)  At times, Plaintiff fails to comprehend television shows unless she watches them more than once.  (Tr. 54)  Finally, Plaintiff said she cannot read street signs, newspaper articles, or stories to her grandson.  (Tr. 55-56)

A vocational expert testified at the hearing.  (Tr. 57-61)  The ALJ asked the vocational expert to consider a hypothetical individual similar in age and education to Plaintiff, with no prior relevant work, and with the following limitations:

> Further assume that such an individual can work at any exertional level as defined in the regulations with the following additional limitations.  The hypothetical individual is able to perform simple, routine tasks with minimal changes in job duties and job setting, and the hypothetical individual should avoid fast-paced production work.  Are there any jobs in the national economy that such an individual could perform?

(Tr. 58)  The vocational expert opined that such an individual would be able to work as a bagger, produce weigher, or cleaner II.[3]  (*Id.*)  When questioned by the ALJ regarding tolerance for off-task behavior, the vocational expert responded as follows:

> It's always been my experience in placing individuals and doing job analyses that employers expect employees to be on task, except for the allowable breaks, you know, the morning break and the afternoon break and lunchtime.  However, there's been research by the Bureau of Labor Statistics that indicate that there are a number of employers that allow up to 10% off-task behavior.  So I would say anywhere between 0 and 10% off-task behavior may be acceptable, depending on the employer.

(Tr. 59)

During his examination of the vocational expert, Plaintiff's attorney asked "if that hypothetical individual required prompting or redirection, to what extent would that be tolerated, and this individual still be employable?" (Tr. 60) The vocational expert replied that such behavior

---

[3] The vocational expert stated that bagger and produce weigher involved light, unskilled work, and cleaner II involved medium, unskilled work.  (Tr. 58)

4

would be acceptable during a probationary period, usually ninety days, "but after that, if the person needed to be redirected, that would be frowned upon, and the person may be better suited to a sheltered workshop situation or supported work environment."[4]  (*Id.*)  Finally, with respect to absenteeism, the vocational expert stated that "usually, one day per month would be acceptable, but any more than that would be over and above what's allowable." (*Id.*)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Uncontroverted Facts, which the Commissioner admitted with certain additions and clarifications.  (ECF Nos. 13-1, 14-1)

### III.    Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific

---

[4] The vocational expert testified that if the hypothetical individual required a job coach, that would eliminate the possibility of competitive employment.  (Tr. 60)

5

job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611.  To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of

6

the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled.  20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled.  *Moore*, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

**IV.    The ALJ's Decision**

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff:  (1) had not engaged in substantial gainful activity since May 27, 2020, the alleged onset date; and (2) had the following severe mental impairments:  neurodevelopmental disorder, borderline intellectual functioning, major depressive disorder, and anxiety disorder, that significantly limited her ability to perform basic work activities as required by SSR 85-28.  (Tr. 18)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-19)

7

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 21)  The ALJ acknowledged that Plaintiff "had a prior psychiatric history," but noted she had experienced "largely normal mental status exams ("MSE") aside from impaired insight and judgement, minimal changes to medication regiment, and regular follow-ups." (*Id.*)  In addition, despite experiencing a death and financial trouble, Plaintiff "reported that she was doing 'alright,' 'ok,' or 'good,' refused further medication changes, was looking forward to spending time with family and friends and had unchanged mental status exams." (*Id.*)  Further, although Plaintiff requested additional meetings with Mr. Westhoff due to an increase in her depression, "her exams did not support a change in her mental status." (*Id.*)  Plaintiff reported she was satisfied with the performance of her medications.  (*Id.*)

With respect to the medical opinions in the record, the ALJ stated that the opinions of Linda Skolnick, Psy.D., and Barbara Markway, Ph.D., were persuasive, as they were "well supported by their analysis and consistent with the record as a whole."  (Tr. 21)[5]  However, the ALJ concluded that the opinion of Mr. Westhoff, APN, was unpersuasive, as it "was unsupported by his analysis and inconsistent with the mental status exams he performed of the claimant, which aside from impaired insight and judgement, were normal, with low complexity of data and risk, and with minimal changes in treatment."  (*Id.*)[6]

---

[5] Drs. Skolnick and Markway found that Plaintiff was mildly impaired in her ability to interact with others, and moderately impaired in her abilities to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage oneself.  (Tr. 123, 140)  They concluded she was able to understand and remember at least 2-step, simple instructions, however, and adjust to changes that were introduced gradually.  (Tr. 126, 127, 145, 147)
[6] Mr. Westhoff found that Plaintiff was markedly limited in her abilities to understand, remember and carry out simple instructions, and make judgments on simple work-related decisions, and

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [S]he is able to complete simple, routine tasks with minimal changes in job duties and setting.  She should avoid fast-paced production work.

(Tr. 20)  Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as bagger, produce weigher, and cleaner II.  (Tr. 22-23)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 27, 2020, through the date of the decision.  (Tr. 23)

## V.    Discussion

Plaintiff claims the ALJ failed to properly credit the Medical Source Statements of Mr. Westhoff, Plaintiff's treating psychiatric nurse practitioner, in which he concluded that Plaintiff consistently presented abnormal insight and judgment, and intermittently presented abnormal appearance, activity level, affect and behavior.  Plaintiff maintains the ALJ's reliance on the opinions of the non-examining, non-treating psychologists, Drs. Skolnick and Markway, was erroneous, as the doctors relied on comments made during office visits rather than Mr. Westhoff's notations.  Finally, Plaintiff asserts the RFC the ALJ constructed was not supported by the weight

---

extremely limited in her abilities to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions.  (Tr. 673-674)  He further concluded that Plaintiff was moderately limited in her ability to interact appropriately with supervisors, markedly limited in her ability to interact appropriately with the public and co-workers, and extremely limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 674)  Mr. Westhoff finally opined that Plaintiff likely would be absent from work more than four days per month, would be "off task" 25% or more of the time, and would need to take unscheduled, 10-15 minute breaks four to six times each work day.  (Tr. 675)

9

of the evidence. The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled.

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Medical Opinion Evidence

As noted above, Plaintiff claims the ALJ failed properly to assess the opinions of the treating psychiatric nurse and the two consulting examiners. The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 416.920c. Under this regulation, ALJs are directed to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant,

10

specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. § 416.920c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [s]he considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 416.920c(b)(2).[7] An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)). See also *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). An ALJ need not explain in his or her decision how he or she considered the other factors. 20 C.F.R. § 416.920c(b)(2).

1. The ALJ Properly Rejected Mr. Westhoff's Medical Opinion

As noted above, the ALJ concluded Mr. Westhoff's opinion that Plaintiff suffered from marked and extreme limitations, and would require absences, off-task time, and unscheduled breaks during a typical workday, was unpersuasive, as it "was unsupported by his analysis and

---

[7] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).
"Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

inconsistent with the mental status exams he performed of the claimant, which aside from impaired insight and judgement, were normal, with low complexity of data and risk, and with minimal changes in treatment." (Tr. 21)  Plaintiff disagrees, maintaining that in discounting Mr. Westhoff's opinion, the ALJ ignored the medical evidence of record.

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted). *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).

The ALJ found Mr. Westhoff's opinion unpersuasive based on several grounds.  For instance, the ALJ concluded that although Plaintiff had a history of requiring supportive services in high school and trouble following written instructions, she did not need reminders to follow through on tasks.  (Tr. 18)  Further, while Plaintiff reported always feeling sad, she was able to prepare basic meals, clean her home, manage her finances, venture out alone, shop in stores, use public transportation, socialize with others over the computer, manage her finances, and get along with authority.  (Tr. 18-19)  The ALJ additionally noted that Plaintiff "had limited changes in her treatment over the alleged period of disability," and no hospitalizations, "which was inconsistent with the alleged level of impairment." (Tr. 22)  Thus, the ALJ concluded that despite Plaintiff's mild and moderate limitations, she had the mental RFC to perform light or medium unskilled work. (Tr. 22-23)

Moreover, although Mr. Westhoff consistently noted Plaintiff's insight and judgment were abnormal, between June 3, 2019 and November 20, 2019, he stated her appearance, behavior,

activity level, orientation, speech, affect, thought processes, cognition and impulse control were normal.[8] In addition, at various times between December 19, 2019 and May 11, 2021, Mr. Westhoff stated Plaintiff's behavior, appearance, activity level and/or affect were also abnormal[9], but he provided no further support for his opinion, and changed neither Plaintiff's medication regimen nor her appointment frequency.[10] Finally, Plaintiff herself reported participating in a number of daily activities, including making her lunch, doing laundry, cleaning her house, shopping, and participating in PSR group activities three days a week and zoom chats daily. (Tr. 392, 393, 394, 395)

Upon consideration of the foregoing, the Court finds the ALJ did not inappropriately substitute her own inferences in analyzing the medical evidence. Rather, she reached her conclusion following a thorough assessment of all the evidence in the record, including Plaintiff's testimony and, importantly, Plaintiff's description of her activities of daily living.

2. The ALJ Properly Credited Drs. Skolnick and Markway's Medical Opinions

The ALJ concluded Drs. Skolnick and Markway's opinions that Plaintiff had mild and moderate mental impairments were persuasive, as they were "well supported by their analysis and

---

[8] (Tr. 494-495 (6/3/2019), 500-501 (6/27/2019), 506-507 (7/29/19), 512-513 (8/26/19), 518-519 (9/23/2019), 525 (10/23/2019), 530-531 (11/20/19))

[9] (Tr. 536-537 (12/19/2019), 551 (4/1/2020), 555 (5/4/2020), 559 (5/27/2020), 574 (7/13/2020), 578 (7/30/2020), 582 (8/13/2020), 586 (8/27/2020), 590 (9/30/2020), 606 (10/28/2020), 610 (11/25/2020), 647 (12/17/2020), 651 (1/28/2021), 655 (2/25/2021), 659 (3/25/2021), 664 (4/23/2021), 669 (5/11/2021))

[10] Plaintiff was consistently medication compliant, and Mr. Westhoff frequently indicated no changes to medications. (Tr. 497, 516, 522, 534, 540, 548, 552, 560, 575, 579, 583, 587, 591, 607, 611, 648, 652, 656, 660, 665, 670) Furthermore, Plaintiff's return visits with Mr. Westhoff were typically scheduled between three and eight weeks later, intervals that are inconsistent with treatment for severe mental impairment. (Tr. 498, 504, 510, 516-517, 522-523, 528, 534, 541, 544, 548, 552, 557, 560-561, 75-576, 580, 583, 587, 591, 608, 612, 649, 653, 657, 661, 666, 671)

consistent with the record as a whole", and Plaintiff's "additional records did not show a substantial change in her mental status from the point the reviewers issued their opinions." (Tr. 21)

The Court finds substantial evidence in the record supports the ALJ's determination. The ALJ did not rely exclusively on Drs. Skolnick and Markway's opinions to support her finding of non-disability. Rather, as noted above, the ALJ reached her conclusion after considering and weighing the relevant evidence of record, including the medical professionals' opinions and treatment notes, and Plaintiff's testimony and reported activities of daily living. *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("[T]he ALJ in this case did not rely solely on [the non-examining consultant's] opinion to reach his conclusions. Rather, the ALJ relied on [the consultant's] opinion as one part of the record, which, as a whole . . . provides substantial support for his findings."); SSR 96-6P, 1996 WL 374180, at *1-3 (Soc. Sec. Admin. July 2, 1996) (an ALJ must treat expert opinion evidence of non-examining providers in conjunction with the other evidence of record).

C.  RFC Determination

Plaintiff asserts the RFC the ALJ constructed is not supported by the weight of the evidence. Specifically, Plaintiff claims the ALJ's conclusion that Plaintiff does not have marked limitations in remembering and carrying out simple instructions is erroneous because (1) the ALJ states Plaintiff was in regular high school classes with supporting services, while Plaintiff's records show she was a graduating special education student, and (2) the ALJ improperly discounted Mr. Westhoff's opinion that Plaintiff is incapable of handling even simple one- or two-step jobs, and would miss too much work and/or be off-task too frequently to sustain competitive employment.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).

14

"The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted).  "However, there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).  An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted).  While the Court recognizes that an ALJ "may not draw upon his own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority."  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

With respect to Plaintiff's high school records, the Court finds her educational records from the 1980s are largely irrelevant, as Plaintiff did not claim disability until May 2020.  Furthermore, even if the ALJ mislabeled Plaintiff's educational background, the error does not meaningfully affect the present analysis.  Either way, the ALJ acknowledged that Plaintiff needed assistance during high school.

With respect to Mr. Westhoff's opinion, as noted above the ALJ did not simply substitute her interpretation for his, but instead supported her conclusion that the opinion was not persuasive with specific citations to the record.  Further, the ALJ properly credited the opinions of Drs.

15

Skolnick and Markway, and incorporated the doctors' described limitations into both the hypothetical she posed to the vocational expert and the RFC she constructed. In sum, the ALJ did not err in formulating Plaintiff's RFC and determining whether Plaintiff is disabled.

### VI. Conclusion

Where the record contains substantial evidence supporting the ALJ's decision, this Court may not reverse the ALJ's decision simply because substantial evidence exists in the record that might have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact."). Here, the ALJ's decision, and therefore, the Commissioner's, was within the "zone of choice." *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of September, 2023.